RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

GERTRUDE CRISP,

           *Plaintiff-Appellant*,

    *v.*

SCIOTO AMBULANCE DISTRICT,

           *Defendant-Appellee*.

No. 25-3885

─────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:23-cv-00273—Jeffery P. Hopkins, District Judge.

Decided and Filed: July 17, 2026

Before: SUTTON, Chief Judge; McKEAGUE and BUSH, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:** Matthew J. Clark, GREGORY, MOORE, BROOKS, CLARK & HELTON, P.C., Detroit, Michigan, for Appellant. Katherine L. Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Mason, Ohio, for Appellee.

─────────────

## OPINION

─────────────

JOHN K. BUSH, Circuit Judge. According to Gertrude Crisp, an emergency medical technician, "the inmates run[] the insane asylum" at her former workplace, the Scioto Ambulance District. R. 19, Crisp Dep., PageID 201. Part of the craziness, Crisp claims, is a time when another EMT at Scioto (Joshua Gullett) groped her and tried to stuff her into a trash can while on the job. When Crisp complained, a supervisor separated them and required that

they never work the same shift, but Gullett faced no other repercussions.  Crisp pursued no legal redress against Gullett or Scioto at that time.

Instead, Crisp waited several years to respond, and when she did, it was in her own way crazy.  One day, she recalled that there were allegedly pornographic images of Gullett and his wife online.  While at work, she showed those images to several EMTs.  Scioto fired Crisp for doing that, and Crisp sued, asserting that the firing was retaliatory under state and federal anti-discrimination law.  The district court disagreed, and so do we.

If Crisp had a legal claim based on Gullett's alleged misconduct, she should have pursued it.  Gullett's alleged wrongs at work did not give Crisp the right to show alleged pornography while on the job.  The district court's grant of summary judgment to Scioto is **AFFIRMED**.

**I.**

Crisp and Gullett first met in 2012 when they were employed as EMTs at the Portsmouth Ambulance Department.  By Crisp's account, Gullett first harassed her while working at Portsmouth.  Crisp alleges that Gullett would "hit on [Crisp] and make inappropriate comments" to her.  *Id.* at PageID 101.  She testified that Gullett "always like[d] to comment about [her] breasts and [] butt" and would "ask to see them" while "jokingly touch[ing]" her, even when she said no.  *Id.* at PageID 109, 112.  Also, when Crisp would "go to do something," Gullett would remark about how Crisp's "breasts [were] in the way . . . because they were big . . . ."  *Id.* at PageID 112.  Gullett's lewd comments allegedly were not limited to Crisp.  Crisp also testified that Gullett made obscene comments "every chance he got" to "any female" at Portsmouth who gave him attention.  *Id.* at PageID 110.  Other times, Gullett "would talk about how he likes to have sex in the shower" or "how he got his wife's baby cousin pregnant."  *Id.* at PageID 114, 115.  In addition, Gullett was suspected of having had a sexual encounter with a co-worker in the back of an ambulance, leading to violent confrontations with Gullett's wife.

By Crisp's telling, another Portsmouth EMT "showed" her and others some "naked photos of Josh Gullett" during a workplace discussion.  *Id.* at PageID 118.  These images came from profiles that the Gulletts allegedly created on an adult website called "Fetlife," where they

supposedly advertised their desire to have sexual relationships outside their marriage.  Crisp saw the photos and filed the Fetlife story in her memory.

After that, Crisp was employed as an EMT by Scioto, where Gullett, by then, also worked.  One day in December 2018, Crisp and Gullett were working a shift together.  Crisp claims that Gullett started the shift talking about Crisp's body.  He then, according to Crisp, tipped over the recliner she was sitting in and tried to stuff her into a trash can.  After Crisp returned to the recliner, Gullett again tipped it over.  At this point, Crisp alleges that she "told him to f*cking stop" and "got a little more aggressive with [him]." *Id.* at PageID 174.  But rather than back off, Gullett (again, according to Crisp) "said that [they] were alone and that there was nobody there to hear [Crisp] scream as he touched [her] breasts" while she was flat on her back from having been tipped out of the chair. *Id.* at PageID 174, 176.

Later that night, according to Crisp's account, she informed supervisor Tracy Mullins of the incident and showed Mullins a copy of Gullett's Fetlife profile.  The employer separated Crisp and Gullett such that they would no longer be scheduled to work shifts together.  Crisp was unhappy that Gullett was not punished, but she believed that the decision was final and out of her purview such that further complaints would be futile.  She did, however, tell anyone who would listen that Gullett was "a skeeve," "a pervert," and "a predator . . . ." *Id.* at PageID 195–96.

After two years with no contact between Gullett and Crisp, the two began communicating on Facebook.  Through online dialogue, Gullett tried to convince Crisp to have sex with him.  Crisp declined, and the matter was dropped.

Fast forward two more years to when Crisp met at the Scioto workplace with Sandra Thacker and Marissa Campbell, two new EMTs there, to discuss "EMS culture . . . ."  R. 19, Crisp Dep., PageID 205.  During the meeting, Crisp explained "that there is always a grain of truth in most of the rumors and that there's lots of . . . perverted[,] predatory men in EMS." *Id.* In addition, she showed Campbell and Thacker nude images of the Gulletts, allegedly from their Fetlife profiles (Gullett's wife was also a Scioto EMT by this point).  The profiles also included sexually charged language and depicted Gullett engaged in sexual acts by himself and with his

wife, but it is unclear whether Thacker or Campbell ever saw those purportedly more graphic images.

After an investigation, the board at Scioto "unanimously agree[d]" to fire Crisp "for the offense of showing nude pictures of an employee to other employees on duty and while on [Scioto's] property." R. 19, Crisp Dep., PageID 221. The way Crisp conducted herself was significant to the employer's firing decision. Eric Lutz, the Scioto board member who conducted the investigation, said that he did not believe that "the pictures would have been necessary to warn anyone about [Gullett's] behavior," that sharing those photographs could have "ma[d]e everyone" in the workplace "uncomfortable," and that it was "way over the top." R. 21, Lutz Dep., PageID 292. After all, even if showing the photographs during off hours might not have warranted an employee's termination, Scioto "expect[ed] exemplary behavior from every employee" while on duty, and this type of conduct was far from "exemplary." *Id.* at PageID 298.

In response to losing her EMT position, Crisp filed this action in the Southern District of Ohio, alleging (as is relevant here) that her firing was unlawful retaliation under both state and federal law.[1] The parties cross-moved for summary judgment, and the district court sided with the employer. Crisp timely appealed.

## II.

We review a district court's order on cross-motions for summary judgment under the same standards as when one party moves for summary judgment. *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). We take the facts in the light most favorable to the non-moving party and grant summary judgment only when the moving party establishes that it is entitled to judgment as a matter of law. *Id.*

---

[1]Crisp also brought claims for hostile work environment but did not pursue them at summary judgment.

## III.

Federal and state law ban retaliation against an employee for opposing an employer's discriminatory practices. 42 U.S.C. § 2000e-3(a); Ohio Rev. Code § 4112.02(I).**2** So an employer cannot fire an employee for simply telling her co-workers that she is being sexually harassed at work. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

When a plaintiff relies on circumstantial evidence to support a retaliation claim, we apply the *McDonnell Douglas* burden-shifting framework.**3** *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). That means Crisp must, among other things, make out a prima facie case of unlawful retaliation. *See id.* at 730–31. To do so, she must convince a jury that she (1) engaged in protected activity that (2) was known to the employer and (3) suffered a materially adverse employment action that (4) "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 730–31 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Based on the undisputed material facts, we hold that no reasonable jury would be able to find all of those elements met here. Title VII does not protect an employee where, as here, the employee has needlessly and gratuitously shared nude and possibly sexually explicit images of co-workers. We can envision scenarios where sharing such material might be necessary or warranted to substantiate a claim of sexual harassment, but this is not one of them.**4**

Title VII protects a broad range of employee conduct, *see, e.g.*, *Huang v. Ohio State Univ.*, 116 F.4th 541, 562 (6th Cir. 2024), but the rule still has limits. "[A]n employee is not protected when [s]he violates legitimate rules and orders of [her] employer, disrupts the

---

**2**The Ohio Civil Rights Act and Title VII "mirror[]" each other "in all relevant respects," so we will analyze the federal- and state-law claims together. *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 n.1 (6th Cir. 2008); *Hughes v. Miller*, 909 N.E.2d 642, 647 (Ohio Ct. App. 2009).

**3***See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The parties do not explicitly state whether this is a direct- or circumstantial-evidence case. We analyze this as a circumstantial-evidence case because Crisp does not characterize her evidence as direct evidence, and Scioto treats this case as involving only circumstantial evidence. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 615 n.10 (6th Cir. 2019).

**4**For example, if an employee received unsolicited nude images from another employee at work, Title VII might protect the recipient's ability to show those images to human resources to substantiate a claim based on the other employee having sent the material.

employment environment, or interferes with the attainment of [her] employer's goals." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989)) (cleaned up); *see also Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 729–30 (6th Cir. 2008) (McKeague, J., concurring).

Displaying the Gulletts' alleged Fetlife profiles to other co-workers while at work was not protected activity. True, Crisp complained that Gullett had made inappropriate comments and had touched her inappropriately while on their shift. If that happened, Gullett's conduct was deplorable and sanctionable. *See, e.g.*, Ohio Rev. Code § 2907.06(A) (sexual imposition); Ohio Admin. Code § 4765-9-01(B) (EMTs must "exhibit respect for the medical needs and personal values of . . . other EMS and healthcare practitioners"). But that would not excuse how Crisp responded.

Instead of seeking redress in a lawful way, Crisp took matters two steps further by showing nude and perhaps also sexually explicit images of both Gullett and his wife (who had nothing to do with Gullett's alleged workplace misconduct) to other co-workers while at work. Crisp did not need to share those images to make her point, nor can she justify showing the images of Gullett's wife, given that Crisp's complaints of workplace harassment pertained only to Gullett himself. Even if the Gulletts posted these images online and publicly shared some of this information, that does not mean that their co-workers had to be subjected to seeing or hearing about it while on the job. In the workplace, the law requires that some things be left unseen. The Gulletts' alleged Fetlife profiles are two of them.

Crisp argues that Title VII protects at least *some* of what she said and did at the meeting with Thacker and Campbell. We agree, *see, e.g.*, *Johnson*, 215 F.3d at 579–80, but that is not enough for her claim to survive. When an employee engages in both protected and unprotected conduct under Title VII, she cannot use the protected conduct to seek shelter from a firing that is based on her unprotected conduct. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1144–45 (11th Cir. 2020) (en banc) (firing was not retaliatory because employee's recruitment of plaintiffs to sue the employer was unreasonable, even though her broader advocacy against discrimination was reasonable). Put more concretely, the mere fact that Crisp was complaining about Gullett's behavior did not give her the right to also show the nude and possibly sexually

explicit pictures of him and his wife.  For good reason, Crisp does not argue that displaying these images while at work is protected activity.  So the fact that she may have been allowed to tell her co-workers about Gullett's alleged workplace misconduct does not excuse her own misconduct.

**IV.**

We close with some important considerations that compel this outcome.  *First*, to the extent that Title VII provides a remedy for employees in a sexually charged workplace, that remedy lies in a hostile-work-environment claim, *see, e.g.*, *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026), and Crisp dropped that claim in her summary judgment papers.  *Second*, Crisp does not bring a disparate-treatment claim, nor does she argue that similarly situated EMTs at Scioto shared nude or sexually explicit images without being fired.  *See, e.g.*, *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985–86 (1988).  Thus, to win relief from our court, Crisp is essentially left to persuade us that a jury could find her employer violated Title VII when it fired her for sharing nude images of a co-worker while on the clock.  That she has not done.  The district court's judgment is **AFFIRMED**.